UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANNE MARIE VANDENWEGHE                    CIVIL ACTION

VERSUS                                     NO: 11-2128

JEFFERSON PARISH, ET AL.                   SECTION: J(5)


### ORDER AND REASONS

This matter is before the Court on Defendants' Partial Motion to Dismiss **(Rec. Doc. 13).**  The Plaintiff has filed an opposition to Defendants' motion **(Rec. Doc. 17)**, to which the Defendants have replied **(Rec. Doc. 20).**  The motion is before the Court on supporting memoranda, and without oral argument.


### PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff Anne Marie Vandenweghe filed this lawsuit against her former employer, Jefferson Parish, and former Interim Parish President, Steven J. Theriot, on August 25, 2011.  She alleges that she was retaliated against by Defendants after she engaged in activity protected under the First Amendment by speaking out against the alleged wrongdoing of several Jefferson Parish officials.  In particular, she claims that Defendants retaliated

1

against her by attempting to force her involuntary resignation, purposefully defaming her in the press and in the workplace, placing her on administrative leave and reassigning her to a different position, and eventually terminating her employment.

The allegations of Plaintiff's complaint are as follows. Plaintiff is a former Assistant Parish Attorney who handled public records requests for Jefferson Parish, Louisiana. Beginning sometime in August 2009, and continuing through January 2010, Plaintiff reportedly began witnessing and subsequently reporting a pattern of legally and ethically questionable behavior by certain Parish officials, including the Director of Code Enforcement, Deborah Villio, the Parish Chief Administrative Officer, Timothy Whitmer, and the Parish Attorney, Tom Wilkinson, among others.  Plaintiff reports that she brought the allegedly unlawful conduct of each of these public employees to the attention of her direct supervisor, Assistant Parish Attorney Louis Gruntz, as well as to Defendant Theriot, but that no investigatory action was ever taken in response.

Subsequently, on February 22, 2010, Plaintiff allegedly discovered that her computer was being "mirrored" within the Parish system.  The following day, Plaintiff reportedly discovered that her office door had been broken down and that her computer and various files had been removed from her office.  She also found a note tacked to the wall instructing her to report to

Theriot's office.  After calling to advise Theriot that she was on her way, Plaintiff was met by Chief of Security Charlie Knopp, who escorted her from her office to another floor of the government office complex, where she was reportedly confronted by Theriot and six other individuals, each of whom had allegedly been reported by Plaintiff for various unlawful conduct.

During the encounter, which allegedly occurred in plain sight of her co-workers and others, Theriot reportedly accused Plaintiff of "blogging" and "internet surfing" while on the job. Theriot informed Plaintiff that she would be placed on paid administrative leave pending an official investigation into her conduct.  He instructed that she be allowed to return to her office to collect her personal belongings and then had her escorted from the premises.

On February 25, 2010, Plaintiff filed for whistleblower protection with the Jefferson Parish Personnel Board.  On March 31, 2010, Theriot ended Plaintiff's paid administrative leave and reassigned her to the Recovery Section of the Parish Attorney's office.  Plaintiff reportedly learned that the individual assigned to her previous position in the Public Records Department, a younger, less experienced male, was being paid a higher salary than she had received.  She also was reportedly informed that she had been "red circled," meaning that she would be deemed ineligible for a raise for seven years.

Plaintiff alleges that she was subjected to "a concerted effort . . . to sabotage her work" in her new position.[1]  She claims that she was not provided with the necessary materials to perform her tasks, such as the passwords required for conducting legal research or to connect to the Parish computer system.  She also alleges that she was assigned a workload that was previously handled by multiple attorneys and was assigned several cases that would prescribe unless suit was filed immediately.  Plaintiff further alleges that she was exposed to unspecified "confrontations" and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

After taking office in October, the newly elected Jefferson Parish President, John Young,  terminated Plaintiff's employment after she failed to produce a mandatory letter of resignation that he had required from all the previous administration's political appointees.  She received the termination notice while on sick leave due to abnormal heart activity, at which time her insurance was also terminated.  Plaintiff alleges that her termination violates the Americans with Disabilities Act ("ADA"), because she was terminated while on documented medical disability, and was not afforded the opportunity for any pre-termination hearing, unlike other political officials.

---

[1]   Complaint, Rec. Doc. 1, p. 14, ¶ 38.

## PARTIES' ARGUMENTS

Defendants move to dismiss several of Plaintiff's claims, although many of the claims for which dismissal is sought are not explicitly asserted as independent causes of action in the complaint.  First, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted with respect to her Title VII, ADA, and Age Discrimination in Employment Act ("ADEA") claims because she fails to allege that she has exhausted administrative remedies before filing suit. Furthermore, because more than 300 days have passed since the last alleged act of discrimination – her termination on November 2, 2010 – any future charge of discrimination that Plaintiff may seek to file would be time-barred.  Accordingly, they argue that these claims should be dismissed.

Next, Defendants seek to dismiss the majority of Plaintiff's remaining claims as time-barred.  In particular, Defendants argue that Plaintiff's Section 1983 First Amendment retaliation claim, her state-law whistleblower claim, and her state-law defamation, invasion of privacy, and intentional infliction of emotional distress claims are each barred by the applicable prescriptive period or statute of limitations based on the allegations of Plaintiff's complaint.  Additionally, even if Plaintiff's intentional infliction of emotional distress claim is not prescribed, Defendants argue that Plaintiff has failed to allege

conduct sufficiently outrageous to state a claim under Louisiana law.  As such, they argue that dismissal of each of these claims is warranted.

Plaintiff opposes Defendants' motion, in part.  As a preliminary matter, Plaintiff concedes that she failed to exhaust her administrative remedies with respect to her Title VII, ADA, and ADEA claims and thus agrees that dismissal of these claims is proper.  Plaintiff additionally offers no response to Defendants' contention that any claim she may have for invasion of privacy is prescribed, thereby implicitly conceding that dismissal is proper.

Next, regarding her Section 1983 First Amendment retaliation and state-law whistleblower claims, Plaintiff does not dispute Defendants' argument that these claims would be time-barred if based on her reassignment to the Recovery Section position in the Parish's legal department in February 2010.  Here, however, she clarifies that both of these claims are based solely on the allegedly wrongful termination of her employment with Jefferson Parish on November 2, 2010.  Although she maintains that the events of February and March 2010 were retaliatory, she avers that she suffered no actionable damages as a result of Defendants actions during this time.  Instead, Plaintiff explains that her termination is the "damage causing event" which forms the basis of these claims.  Because these claims were filed within a year

of the date of her termination, Plaintiff submits that they are not time-barred.

With respect to her defamation claim, Plaintiff's argument, which is somewhat difficult to follow, is that Defendants' campaign of defamatory statements culminated in the "ultimate defamation" to her reputation and character – i.e., the termination of her employment, which occurred on November 2, 2010.  Because she filed suit within a year of her discharge, Plaintiff contends that her defamation claim is timely.  In the alternative, Plaintiff contends that her defamation claim is not prescribed because the prescriptive period was suspended during the Parish's internal investigation into her conduct.  Because she has not been notified that this investigation has officially been closed, she argues that her claim is viable.

Finally, Plaintiff disputes Plaintiff's argument that she has failed to state a claim for intentional infliction of emotional distress.  She argues that she has alleged a pattern of conduct that is sufficiently severe to sustain an emotional distress claim, and that question of whether the Defendants' conduct is "extreme and outrageous" is for the finder of fact to decide.

**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure

authorizes dismissal where a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33; Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The Court is not bound, however, to accept as true legal conclusions couched as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In order to be deemed legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. Id. The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. Lormand, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that

there is an insuperable bar to relief, however, the claim must be dismissed.  Jones v. Bock, 549 U.S. 199, 215 (2007); Twombly, 550 U.S. at 555; Carbe v. Lappin, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

## DISCUSSION

### A.  Title VII, ADA, and ADEA Claims

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002).  The exhaustion requirement is met when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.  Id.

In deferral states like Louisiana,[2] a plaintiff must file a charge of discrimination with the EEOC within 300 days from the date of the last alleged act of discrimination in order to preserve his right to sue in federal court.  See 42 U.S.C. § 2000e-5(e)(1) (providing that Title VII plaintiff must file charge within 300 days after the alleged unlawful employment

---

[2]  A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice.  Clark v. Resistoflex Co., 854 F.2d 762, 765 n.1 (5th Cir. 1988).  The Louisiana Commission on Human Rights was initially funded and began operating in April 1994, making Louisiana a deferral state since that time.  La. Rev. Stat. § 51:2233.

practice in deferral states); 42 U.S.C. § 12117(a) (incorporating Title VII remedies and procedures for ADA claims); 29 U.S.C. § 626(d)(1)(B) (stating plaintiff must file age discrimination charge within 300 days after the allegedly discriminatory act in deferral states).  Although the exhaustion requirement is not a jurisdictional prerequisite, it is a "precondition to filing suit in district court." Cruce v. Brazosport Indep. Sch. Dist., 703 F.2d 862, 863 (5th Cir. 1983).  The failure to exhaust administrative remedies results in dismissal. Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996).

Here, Defendants argue that Plaintiff's claims under Title VII, the ADA, and the ADEA must be dismissed for failure to exhaust her administrative remedies.  They also point out that, because more than 300 days have passed since the last allegedly discriminatory act – Plaintiff's November 2, 2010 termination – any future charge of discrimination that Plaintiff may seek to file would clearly be time-barred.  Plaintiff concedes that she neither filed a charge of discrimination with nor received a right to sue notice from the EEOC before pursuing these claims in federal court.  Accordingly, to the extent Plaintiff seeks to assert any claims under Title VII, the ADA, and the ADEA, dismissal is clearly proper.

## B.  First Amendment Retaliation Claims

"Public employees do not surrender all their free speech

rights by reason of their employment.  Rather, the First
Amendment protects a public employee's right, in certain
circumstances, to speak as a citizen on matters of public
concern." Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 691
(5th Cir. 2007).  When a public employee is subjected to adverse
employment action in retaliation for the valid exercise of the
right to free speech, an action may be maintained under Section
1983 based upon the violation of the employee's First Amendment
rights.  Id.

     In their motion, Defendants argue that Plaintiff's Section
1983 First Amendment retaliation claim should be dismissed as
time barred.  The Supreme Court has held that the appropriate
statute of limitations to be applied in all Section 1983 actions
is the forum state's statute of limitations governing personal
injury actions.  See Wilson v. Garcia, 471 U.S. 261, 276-80
(1985) (superseded by statute on other grounds); see also Hitt v.
Connell, 301 F.3d 240, 246 (5th Cir. 2002) (applying state
personal injury statute of limitations to First Amendment
retaliation claim).  However, the date that a Section 1983 claim
accrues is governed by federal law, not state law.  Under federal
law, the limitations period begins to run when the plaintiff
"becomes aware that he has suffered an injury or has sufficient
information to know that he has been injured." Helton v.
Clements, 832 F.2d 332, 335 (5th Cir. 1987).  Louisiana law

provides a one-year liberative prescriptive period for personal injury claims.  See Bourdais v. New Orleans City, 485 F.3d 294, 298 (5th Cir. 2007) (internal citation omitted) (citing LA. CIV. CODE art. 3492).  Accordingly, Plaintiff was required to have filed suit within one year of the date that she became aware that she has suffered injury or had sufficient information to know that she has been injured.[3]

In her complaint, Plaintiff alleges that Defendants retaliated against her for her protected speech by placing her on administrative leave;[4] "by reassigning her to a lesser position not related to the disclosure of public documents;"[5] by "publishing defamatory statements about her for using office computers and taxpayer resources by 'blogging' and using the internet at work inappropriately;"[6] and then "by wrongfully terminating her employment with the Parish of Jefferson and not affording the opportunity of any type of administrative hearing."[7]  Plaintiff's complaint confirms that she was placed on

---

[3]  Although the exact date Plaintiff became aware of any injuries she alleges to have suffered is ambiguous, she makes no argument that there was ever a delay between the Defendants' conduct and her awareness of the resultant injuries.

[4]  Complaint, Rec. Doc. 1, p. 19, ¶ 55.

[5]  Complaint, Rec. Doc. 1, pp. 17–18, ¶ 48.

[6]  Complaint, Rec. Doc. 1, p. 18, ¶ 54.

[7]  Complaint, Rec. Doc. 1, p. 18, ¶ 51.

paid administrative leave on February 23, 2010, until March 31, 2010, when she was reassigned to the allegedly less desirable position in the Recovery Section of the Jefferson Parish Attorney's Office.[8]

To the extent her claim is based on being placed on administrative leave or her reassignment, Defendants maintain that it is time-barred, as such conduct occurred more than a year prior to the date that she filed this lawsuit, on August 25, 2011. Although Plaintiff's opposition memorandum is less than clear, it does not appear that she disputes Defendants' argument on this point, asserting instead that her First Amendment retaliation claim is based entirely on the termination of her employment with Jefferson Parish on November 2, 2010. While Plaintiff maintains that the events leading up to her discharge were retaliatory, she acknowledges that she suffered no "adverse employment action" or damages until she was terminated.[9] Because she filed suit on August 25, 2011, well within a year of the date

---

[8]   Complaint, Rec. Doc. 1, pp. 13-14, ¶¶ 34-36.

[9]   It does not appear that Plaintiff contests prescription of any claim under a "continuing tort" theory. Plaintiff describes the conduct predating her eventual termination as involving "discrete" and "individual events," rather than a single, continuing violation. See Plaintiff's Opposition Memorandum, Rec. Doc. 17, p. 10. Courts have found the application of the continuing violation doctrine inappropriate in Section 1983 claims involving a series of discrete violations. See, e.g., Detro v. Roemer, 739 F. Supp. 303, 305 (E.D. La. 1990).

of her termination, Plaintiff submits that her First Amendment retaliation claim is not time-barred.

In their reply memorandum, Defendants note that they do not seek dismissal of Plaintiff's claim to the extent that it is based solely on her allegedly wrongful termination on November 2, 2010.[10]  Accordingly, there is no dispute among the parties, and the Court is in agreement, that Plaintiff's claim is not time-barred to the extent that it is based on her termination, and not the events leading up thereto.  However, to the extent that she seeks redress for injuries known to have been sustained prior to August 25, 2010, the Court finds that these claims are facially time-barred.  Although Plaintiff argues that *contra non valentem* operates to suspend the one-year prescriptive period, the Court finds no facts alleged in the complaint that would warrant application of this or any other tolling doctrine as to the Defendants' pre-August 25, 2010 conduct.  Accordingly, any claims based on such are dismissed as time-barred.

## C.  State Whistleblower Claims

Plaintiff also asserts claims for violation of Louisiana's whistleblower statute, La. Rev. Stat. § 23:967, which provides:

---

[10]  See Defendants' Reply Memorandum, Rec. Doc. 20, p. 6 ("Thus, to the extent Plaintiff concedes that her First Amendment Retaliation and Section 1983 claim is limited to her alleged wrongful termination on November 2, 2010, Defendants accept that limitation.") (emphasis in original).

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> > (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> >
> > (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> >
> > (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev. Stat. § 23:967(A).  The statute goes on to state that an employee aggrieved by a practice prohibited by subsection A of the statute may bring an action for damages against her employer. See La. Rev. Stat. § 23:967(B).

Defendant contends that the face of Plaintiff's complaint reveals that her whistleblower claims are time-barred to the same extent as her First Amendment retaliation claims.  Although the statute does not set forth a specific prescriptive period, both Louisiana courts and federal courts applying Louisiana law in diversity cases have concluded that whistleblower claims are "delictual in nature," and are thus subject to the general one-year liberative prescriptive period provided by Louisiana Civil Code article 3492.  See Nolan v. Jefferson Parish Hosp. Service Dist. No. 2, 01-CA-175, p. 12 (La. App. 5 Cir. 6/27/01), 790 So. 2d 725, 733; Ganheart v. Xavier Univ. of La., No. 07-9703, 2009 WL 24227, at *9 (E.D. La. Jan. 2, 2009); Murray v. Louisiana, No. 08-254, 2011 WL 703653, at *6 (M.D. La. Feb. 2, 2011); Langley v.

<u>Pinkerton's Inc.</u>, 220 F. Supp. 2d 575, 581 (M.D. La. 2002);
<u>Lesikar v. Frymaster, L.L.C.</u>, No. 04-0786, 2005 WL 3359178, at *3
n.4 (W.D. La. Dec. 8, 2005).  Under article 3492, prescription
commences to run from the day the injury or damage is alleged to
have been sustained.  <u>See</u> LA. CIV. CODE art. 3492; <u>Nolan</u>, 790 So.
2d at 733; <u>Langley</u>, 220 F. Supp. 2d at 581.

Although the allegations of her complaint suggest otherwise,
Plaintiff avers that she sustained damage as a result of, and
brought a whistleblower claim to seek redress for "the
retaliatory firing she sustained as a public employee in response
to her systematic efforts to report illegal activities in the
best interest of the public."[11]  In light of Defendants'
willingness to accept this concession, the Court will allow
Plaintiff to proceed with her whistleblower claim, provided such
is based upon her allegedly wrongful termination.  However, to
the extent that she alleges retaliation based upon being placed
on administrative leave on February 23, 2010, being reassigned to
a different position on March 31, 2010, or any other allegedly
retaliatory conduct occurring prior to August 25, 2010, the claim
is facially prescribed and thus properly dismissed.[12]

_____

[11]  Plaintiff's Opposition Memorandum, Rec. Doc. 17, p. 16.

[12]  The Court rejects Plaintiff's contention that the one-
year prescriptive period was suspended during the pendency of the
Parish's internal investigation of her conduct.  <u>See</u> <u>Singleton v.
RPM Pizza, Inc.</u>, No. 03-2219, 2004 WL 2216530, at *5 (E.D. La.
Sept. 30, 2004) ("Nothing in the statute indicates that

### D.  Invasion of Privacy Claims

Plaintiff's complaint asserts that, on February 22, 2010, she discovered and subsequently reported that her computer was being "mirrored" by individuals within Jefferson Parish's computer system.[13]  She also alleges that her office door was broken down and that her computer and other files were wrongfully confiscated the next day on February 23, 2010.  To the extent that Plaintiff seeks to maintain an invasion of privacy claim based on these allegations, such would be subject to a one-year prescriptive period, running from the date that the invasion occurred.  See LA. CIV. CODE art. 3492; Weathersby v. Jacquet, 01-1567, pp. 6-7 (La. App. 3 Cir. 4/3/02), 813 So. 2d 1135, 1139-40 (finding invasion of privacy claim was prescribed when filed more than a year after invasion was alleged to have occurred); Jones v. Stayner, No. 05-1632, 2006 WL 1831527, at *4 (W.D. La. June 28, 2006) (same).  Accordingly, as Defendants correctly point out, any claim based on such must have been brought on or before February 23, 2011, approximately six months before Plaintiff's suit was filed.  Because Plaintiff fails to address Defendant's arguments with respect to this claim in her opposition

---

prescription is suspended during any administrative review or investigation."); Langley, 220 F. Supp. 2d at 581 ("Moreover, the court has found nothing to indicate that the Whistleblower Statute is suspended during any administrative review or investigation.").

[13]  Complaint, Rec. Doc. 1, pp. 10-11,  ¶ 31.

memorandum, the Court therefore finds that the claim is facially prescribed, and dismissal is therefore proper.

### E.  Defamation Claims

Plaintiff also seeks to assert a defamation claim. Defamation is a tort involving an invasion of a person's interest in his reputation and good name.  Costello v. Hardy, 03-1146, p. 12 (La. 1/21/04), 864 So. 2d 129, 139.  In order to prevail in a defamation action, a plaintiff must establish: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publishing party; and (4) resulting injury. Id.

Defendants argue that any defamation claim which Plaintiff may have had is now prescribed.  The prescriptive period applicable to the defamation claims is one year, running from the date the injury or damage is sustained.  Farber v. Bobear, 2010-CA-0985, pp. 11-12 (La. App. 4 Cir. 1/19/11), 56 So. 3d 1061, 1069.  For the purposes of prescription, damages are deemed to have been sustained from the date injury is inflicted, provided that the injury is apparent to the victim, even if the extent of damages may not yet be known.  Wiggins v. Creary, 475 So. 2d 780, 781 (La. Ct. App. 1985).[14]  Furthermore, under Louisiana law,

---

[14]  Plaintiff does not argue that she ever lacked knowledge of the publication or dissemination of any of the allegedly defamatory statements.

each and every publication or communication of a defamatory statement gives rise to a new and separate cause of action; defamation cannot generally be a "continuous tort." <u>Wiggins v. Creary</u>, 475 So. 2d 780, 781 (La. Ct. App. 1985).

In the instant case, Plaintiff alleges that Defendants "purposefully and systematically defamed her in statements to the press and at recorded meetings whereby they wrongfully and with malice accused her of 'blogging' and inappropriate use of computers at the workplace, and publicly placed her on administrative leave for such alleged behavior."[15]  Plaintiff's complaint is less than clear on the particulars of these statements, especially with respect to when they are alleged to have been made.  A careful reading, however, reveals that many, if not all, of the purportedly defamatory statements were made contemporaneously with Defendants' decision to place her on administrative leave in February 2010, as indicated by her use of the past progressive verb tense to describe the statements.[16] <u>See State v. Rodriquez</u>, 606 A.2d 22, 29 (Conn. App. Ct. 1992)

---

[15]  <u>See</u> Complaint, Rec. Doc. 1, p. 2, Preliminary Statement; p. 18, ¶ 54.

[16]  <u>See</u> Complaint, Rec. Doc. 1, p. 18, ¶ 54 ("Plaintiff further alleges that defendant, The Parish of Jefferson, through its Interim Parish President, Theriot, retaliated against her by publishing defamatory statements about her, including that she *was being placed* on administrative leave for using office computers and taxpayer resources by 'blogging' and using the internet at work inappropriately, knowing these statements to be false.") (emphasis added).

(noting that affiant's use of past progressive verb tense to describe activity indicated description of continuing or intervening action).  This is additionally confirmed by Plaintiff's opposition memorandum, in which she acknowledges that her "reputation may have been harmed at that time," a statement which was made in reference to the Defendants' "accusations of [her] alleged violations of work policies which occurred in February 2010."[17]  To the extent that the defamatory statements were alleged to have been made at the commencement of or during her administrative leave, the claim is clearly prescribed, for essentially the same reasons that Plaintiff's other claims based on the same conduct are also prescribed.

Nevertheless, Plaintiff asserts that her defamation claim is not prescribed because prescription was suspended during the Parish's internal investigation into her allegedly improper actions.  In support of this contention, Plaintiff cites several cases that stand for the proposition that the one-year prescriptive period for a defamation claim based upon allegations made in a judicial proceedings and against a party to those proceedings is suspended until the time that those proceedings are terminated.  See Nolan, 790 So. 2d at 730; Lyons v. Knight, 2010-1470, pp. 4-6 (La. App. 3 Cir. 5/11/11), 65 So. 3d 257, 261-62.

---

[17]  Plaintiff's Opposition Memorandum, Rec. Doc. 17, p. 8.

However, this rule has no application under the facts of the instant case.  This rule only operates to suspend prescription as to defamation claims arising out of statements "made in *judicial* proceedings."  See Nolan, 790 So. 2d at 730 (emphasis added); Lyons, 65 So. 3d at 261 (citations omitted in both).  Here, Plaintiff makes no allegation that any of the purportedly defamatory statements were ever made in the context of a judicial proceeding.  See Lyons, 65 So. 3d at 261 (noting that the suspension of prescription is not applicable where "the statements were not made in a judicial proceeding, but prior to any proceeding").  Plaintiff cites no authority suggesting that an employer's internal investigation is somehow tantamount to a judicial proceeding.

Finally, relying on the same technique utilized to escape dismissal of her other claims, Plaintiff mistakenly contends that her claim is not prescribed to the extent it is based upon her November 2, 2010 termination, which she characterizes as the "ultimate defamation to [her] reputation and character."[18] However, standing alone, the fact that Defendants terminated Plaintiff's employment cannot be defamatory because this is *conduct*, and not *words*.  See Filson v. Tulane Univ., No. 09-7451, 2010 WL 5477189, at *7 (E.D. La. Dec. 29, 2010).  Plaintiff does not appear to allege that any defamatory comments were made

---

[18]   Plaintiff's Opposition Memorandum, Rec. Doc. 17, p. 5.

regarding her termination, or regarding other subjects, at any point after August 25, 2010.  Finding no other applicable statutory or jurisprudential rule which would serve to interrupt prescription under the facts alleged, the Court finds that Plaintiff's defamation claim should be dismissed, at least to the extent that it fails to allege any specific statements made after August 25, 2010.

The Court does note, however, that Plaintiff's opposition memorandum also asserts that she "was the subject of ongoing defamatory statements up through the date of her ultimate termination on November 2, 2010."[19]  While the Court finds no specific allegations of statements made after August 25, 2010, considering the general lack of specificity concerning the time frame of these statements, it is at least plausible that some of the disputed statements could give rise to claims that are not time-barred.  Accordingly, the dismissal of Plaintiff's claims will be made without prejudice, and Plaintiff will be granted leave to amend her complaint to re-plead her defamation claim to the extent it would be timely.

**F.  Intentional Infliction of Emotional Distress Claims**

Finally, Plaintiff asserts a claim for intentional infliction of emotional distress.  A claim for intentional infliction of emotional distress is a delictual action subject to

---

[19]  Plaintiff's Opposition Memorandum, Rec. Doc. 17, p. 5.

the same one-year prescriptive period governing Plaintiff's whistleblower claims.  Alcorn v. City of Baton Rouge, 2002-0952, p. 4 (La. App. 1 Cir. 12/30/04), 898 So.2d 385, 388. Prescription begins to run from the date that injury or damage is sustained.  Id. (citing LA. CIV. CODE art. 3492; Bustamento v. Tucker, 607 So. 2d 532, 539 n.9 (La. 1992)).  Consequently, Defendants argue that any allegations relating to emotional distress suffered prior to August 25, 2010 are prescribed to the same extent as Plaintiff's whistleblower action.  Defendants further submit that, even if the claim is not partially prescribed, Plaintiff fails to allege conduct sufficiently outrageous to support a claim for intentional infliction of emotional distress.

Under Louisiana law, a plaintiff seeking to recover under an intentional infliction of emotional distress theory must establish three elements:  (1) that the defendant's conduct was so extreme in degree and character that it went beyond all bounds of decency and was utterly intolerable in a civilized community; (2) that such conduct caused severe emotional distress; and (3) that the defendant intended to inflict severe emotional distress upon the plaintiff, or that he knew that such severe distress would be certain or substantially certain to result from the conduct.  White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

23

The behavior that will constitute "extreme and outrageous" conduct will somewhat necessarily depend on the context in which it occurs.  Deus v. Allstate Ins. Co., 15 F.3d 506, 514 (5th Cir. 1994).  In the context of the workplace, however, Louisiana jurisprudence has severely limited the types of behavior that will give rise to a viable claim for intentional infliction of emotional distress.  The cause of action is generally only available in cases involving a pattern of deliberate, repeated harassment over an extended period of time.  Nicholas v. Allstate Ins. Co., 99-2522, p. 14 (La. 8/31/00), 765 So. 2d 1017, 1026 (citing White, 585 So. 2d at 1205).  Additionally, the conduct must be intended to cause severe emotional distress – not just some lesser degree of fright, embarrassment, anxiety, or grief.  Liability will only stand where the distress suffered is more than a reasonable person could be expected to endure.  Id. (citing White, 585 So. 2d at 1210).

In the instant case, taking Plaintiff's factual allegations as true, and even considered in the aggregate, the Court find that Defendants' alleged conduct does not rise to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Fletcher v. Wendelta, Inc., 43,866, p. 10 (La. App. 2 Cir. 1/14/09), 999 So. 2d 1223, 1230.  Although some portion of the

24

conduct alleged may be actionable under different theories, the
cases in which workplace emotional distress claims have been
allowed to proceed involve patterns of behavior far more
egregious than that which is described here.  See Bustamento v.
Tucker, 607 So. 2d 532 (La. 1992) (finding that supervisor's two-
year course of conduct, which included daily improper sexual
comments, innuendo, and advances, threats of rape and other
physical violence, and even attempts to run plaintiff over with a
forklift, constituted extreme and outrageous behavior); Walters
v. Rubicon, Inc., 96-2294 (La. App. 1 Cir. 12/29/97), 706 So. 2d
503 (holding that plaintiff adequately alleged extreme and
outrageous conduct by alleging that his supervisors continuously
cursed at, screamed at, and threatened him; ordered him to ignore
company policy which he validly believed to be illegal; made
harassing telephone calls after work; intentionally cut in front
of him in traffic, endangering his son and himself; and pointed
his hand at him in the form of a gun and mouthed the word "pow");
Wright v. Otis Engineering Corp., 94-257 (La. App. 3 Cir.
10/5/94), 643 So. 2d 484, 487 (holding that a reasonable jury
could find that supervisor's conduct in screaming and cursing at
employee daily over a five-year period, belittling his requests
and decisions, and continually threatening his continued
employment, all while knowing that the employee had been
hospitalized for depression and had undergone electric shock

25

treatment, constituted extreme and outrageous conduct); <u>Channey</u> <u>v. Home Depot, USA</u>, No. 99-1792, 1999 WL 649633, at *3 (E.D. La. Aug. 24, 1999)(supervisor's longstanding pattern of emotionally abusive behavior, including calling plaintiff names and racial epithets in front of other employees, shoving and threatening him at company events, withholding medical care after he was injured, requiring him to submit to drug tests, and requiring him to accept a toilet seat as a "shit award" in front of over 100 witnesses, was sufficient to amount to extreme and outrageous conduct).

Moreover, nowhere in Plaintiff's complaint is it alleged that Defendants ever *intended* to cause her severe emotional distress, or that they knew such distress was certain, or substantially certain, to result.  As such, Plaintiff fails to allege an essential element of her emotional distress claim, and dismissal is proper on this basis, as well.  <u>See</u> <u>Sparks v.</u> <u>Donovan</u>, 2004-388, p. 8 (La. App. 3 Cir. 10/13/04), 884 So. 2d 1276, 1281 (finding that plaintiff failed to state a claim for intentional infliction of emotional distress on account of failure to allege facts showing that defendant intended to cause emotional distress or that actions were certain to cause emotional distress); <u>Molette v. City of Alexandria</u>, No. 040501A, 2005 WL 2445432, at *8 (W.D. La. Sept. 30, 2005) (same). Accordingly, any claim for intentional infliction of emotional

distress will be dismissed.

**CONCLUSION**

Accordingly, for the reasons expressed above, **IT IS ORDERED** that Defendants' Partial Motion to Dismiss **(Rec. Doc. 13)** is **GRANTED IN PART**, as provided below.

With respect to Plaintiff's Title VII, ADA, and ADEA claims, as well as any state-law claims for invasion of privacy or intentional infliction of emotional distress, the motion is **GRANTED**.

With respect to Plaintiff's First Amendment retaliation claims and claims for violation of the Louisiana whistleblower statute, the motion is **GRANTED** only to the extent the claim is based upon conduct occurring prior to August 25, 2010.

With respect to Plaintiff's defamation claim, the motion is **GRANTED**.  However, this claim will be dismissed without prejudice to allow Plaintiff the opportunity to plead any allegations regarding allegedly defamatory statements made on or after August 25, 2010.

New Orleans, Louisiana, this 18th day of May, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE